Elaine Petre HOOPER, Appellant

v.

PITNEY BOWES, INC., Gary Simpson, and Robert Moretti, Appellees.

No. 06–94–00034–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 18, 1994.

Decided Jan. 31, 1995.

774

Britton D. Monts, Dallas, for appellant.

Charles T. Frazier, Jr., Cowles & Thompson; Joseph W. Spence, Cynthia Hollingsworth, Gardere & Wynne, and Gayla C.

Crain, Epstein, Becker & Green, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Elaine Hooper brought this suit against Gary Simpson, Robert Moretti, and Pitney Bowes, Inc. seeking damages for intentional infliction of emotional distress and slander. Hooper was a sales manager for Pitney Bowes, and Simpson and Moretti were two of her superiors. The jury found that only Simpson had inflicted emotional distress on Hooper. It also found that only Moretti had slandered Hooper, but it also found that Hooper consented to or otherwise produced the defamation. The jury awarded Hooper $50,-000.00 actual damages and $5,000.00 punitive damages against Simpson and $20,000.00 actual damages and $5,000.00 punitive damages against Moretti. The trial court, however, rendered a take-nothing judgment for Moretti based on the jury's finding that Hooper consented to the slanderous statements. The jury did not find liability against Pitney Bowes.

On appeal Hooper contends that the jury's failure to find any liability against Pitney Bowes is against the conclusive evidence and the great weight of the evidence, that the jury answers as to Moretti's slander and Hooper's consent are irreconcilably conflicting, and that the finding of consent is against the great weight of the evidence. We conclude that the jury's failure to find liability against Pitney Bowes is against the great weight of the evidence, the issues of slander and consent are not conflicting, and the finding of consent is not against the great weight and preponderance of the evidence. Thus, we affirm the judgment as to Simpson and Moretti, but sever the cause of action against Pitney Bowes and reverse and remand that cause for a new trial.

Mrs. Hooper was a sales manager for Pitney Bowes. Her supervisors were Simpson, the regional vice-president, and Moretti, the branch manager. Hooper was a very suc-

cessful sales manager and was highly regarded by her superiors. Eventually, however, officials of Pitney Bowes discovered that Hooper was conducting emotionally charged sales meetings, as well as private encounters, where Hooper encouraged her sales staff to engage in mind-altering exercises, experience emotional breakthroughs, and release their inner energy so they could become better sales persons. Attendees at these meetings with Hooper characterized them as "cult-like." Complaints about Hooper's actions were relayed to Simpson and Moretti, who in turn launched an official investigation. Ultimately, Simpson and Moretti determined that Hooper was acting inappropriately. Consequently, they gave her a multi-page list of restrictions on her future activities that were designed to end the intimate emotional encounters with her staff and to return their activities to a more normal business climate. Hooper did not obey all of the restrictions, and she was eventually fired. Hooper did not base her suit on the investigation itself, but rather on Simpson's and Moretti's acts and statements that characterized her conduct as cult-like or occult, new-age, unchristian, and even satanic. Sonny Craft, a Pitney Bowes sales manager, testified that he, Simpson, and Moretti made statements that Hooper was "in the occult," "a witch," "a sorceress," and "satanistic."

■ To recover for intentional infliction of emotional distress, Hooper must have established that Simpson committed intentional or reckless acts that were extreme and outrageous and that caused her to suffer severe emotional distress. *Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex.1993); *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993). Simpson, in a cross-point, and Pitney Bowes, in its reply to Hooper's brief, say there is no evidence that Simpson engaged in such conduct toward Hooper. They do not argue that the statements and actions did not occur; only that they were not extreme or outrageous and were not made in the scope of Simpson's employment.

■ To be considered extreme and outrageous the conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society. *Wornick v. Casas, supra; Twyman v. Twyman, supra.* In these times, a high degree of opprobrium has attached to terms such as "cultist," "occult," "unchristian," and especially "sorceress," "satanistic," and "witch." False accusations against or characterizations of persons using those and similar terms, we believe, can certainly be considered to be beyond all bounds of decency and to be atrocious and utterly intolerable in a civilized society. We find sufficient evidence to support the jury's implied finding that the conduct in question was extreme and outrageous.

The jury failed to find Pitney Bowes liable for either Simpson's infliction of emotional distress or Moretti's slander. The jury's answers must have been based on its implied failure to find that Simpson and Moretti were acting in the scope of their employment when they committed their acts. Hooper says this implied failure to find is against the conclusive evidence or is against the great weight and preponderance of the evidence. We agree that it is against the great weight and preponderance of the evidence.

■ In its general instructions the trial court told the jury that a corporation is responsible for the acts of its officers, agents, or employees that are done within the course and scope of their employment, and defined course and scope of employment as any act done by an officer, agent, or employee in the furtherance of the corporation's business. An action is sustainable against a corporation for defamation by its agent if the defamation is referable to the duty owed by the agent to the corporation and was made while in the discharge of that duty. Neither express authorization nor subsequent ratification is necessary to establish liability. *Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex. 1968); *Cotton Belt R.R. v. Hendricks*, 768 S.W.2d 865, 870 (Tex.App.—Texarkana 1989, no writ). The undisputed evidence shows that both Moretti and Simpson were managers for Pitney Bowes at the local and regional levels and that each had managerial responsibility including the authority to hire and fire employees. It is also undisputed that all of the statements they made to co-workers and to those outside the company

were made in the process of investigating Hooper's actions at her motivational meetings, and that their duties involved controlling the actions of a local manager such as Hooper. The investigation that they officially initiated was thus within their authority and responsibility.

Pitney Bowes argues that Simpson and Moretti did not act within the course of their employment because there is evidence that their investigation involved some clandestine meetings away from corporate offices, secret recordings, trips to libraries to investigate cult activity, and private meetings with employees concerning Hooper's behavior. It argues that this evidence shows that Simpson and Moretti were acting outside the scope of their employment because these activities would not have been approved by the company. Simpson's immediate superior testified that none of Simpson's actions was appropriate for the manager and that he would certainly want to know about them. Also, as soon as the central offices became aware of the accusations against Hooper an internal investigation was conducted which concluded that, although Hooper's actions as a manager were inappropriate, she should not be terminated, but instead should be given a second chance under strict written controls.

■ This evidence, however, is not dispositive on the question. The fact that an employee does an act that is unauthorized or that would not be approved by his employer does not mean that the employee was outside the scope of his employment. The employer is liable for the act of his employee, even if the specific act is unauthorized or contrary to express orders, so long as the act is done while the employee is acting within his general authority and for the benefit of the employer. *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667 (Tex.1990); *J.V. Harrison Truck Lines, Inc. v. Larson,* 663 S.W.2d 37 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Baker Hotel of Dallas v. Rogers,* 157 S.W.2d 940 (Tex.Civ.App.—Dallas 1941), *writ ref'd per curiam,* 138 Tex. 398, 160 S.W.2d 522 (1942).

■ The statements made by Simpson and Moretti about Hooper were made in their effort to investigate her conduct as their subordinate. Evidence showing that they met secretly away from the company to plan their next move is not dispositive. All of their activities were the kind that a manager was expected to conduct and were within the scope of their employment. We find the jury's failure to find liability against Pitney Bowes for Simpson's acts to be so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ The remaining question as to Pitney Bowes is whether Simpson's and Moretti's acts were subject to a qualified privilege that shields them and Pitney Bowes from liability. As a defense to libel or slander, a qualified privilege extends to communications made in good faith on a subject in which the author has an interest or duty to another person having a corresponding interest or duty. *Dixon v. Southwestern Bell Telephone Co.,* 607 S.W.2d 240 (Tex.1980); *Gillum v. Republic Health Corp.,* 778 S.W.2d 558 (Tex.App.—Dallas 1989, no writ); *Houston v. Grocers Supply Co.,* 625 S.W.2d 798 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814 (Tex.Civ.App.—Tyler 1980, no writ). The effect of the privilege is to justify the statements when they are made without actual malice. *Dixon v. Southwestern Bell Telephone Co., supra.* The privilege is peculiarly applicable to communications between employers and employees. *Dixon v. Southwestern Bell Telephone Co., supra; Bergman v. Oshman's Sporting Goods, Inc., supra.*

■ When publication of a defamatory statement is made under circumstances creating a qualified privilege, the plaintiff has the burden to prove malice or the absence of good faith. *Houston v. Grocers Supply Co., supra.* The jury found that both Simpson and Moretti acted with malice. Thus, although their acts were privileged, the privilege was lost.

■ Pitney Bowes challenges whether the intentional tort of infliction of emotional distress may be applied to impose liability under principles of *respondeat superior.* Generally, the willful and malicious actions of an employee acting within the scope of his

employment are imputed to the employer, and they subject the employer to liability under the principles of *respondeat superior.* *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880 (1948); *Moore v. El Paso Chamber of Commerce,* 220 S.W.2d 327, 331 (Tex.Civ.App.—El Paso 1949, writ ref'd n.r.e.); 33 Tex.Jur.3d *Employer and Employee* § 285 (1984). An exception to this rule, usually applied in cases involving serious criminal activity, is that an employer is not liable for intentional and malicious acts that are unforeseeable considering the employee's duties. *Adami v. Dobie,* 440 S.W.2d 330, 334 (Tex.Civ.App.—San Antonio 1969, writ dism'd); 1 J. Hadley Edgar & James B. Sales, Texas Torts & Remedies § 4.02(2)[f] (1994). In this case Simpson's and Moretti's acts were committed while they were performing their official duties. It is reasonably foreseeable that a manager might mismanage his investigation of an employee to the extent that he would commit intentional infliction of emotional distress. Thus, Pitney Bowes is liable for the intentional and malicious acts of its manager.

Hooper next contends that the trial court erred in disregarding the jury finding that Moretti slandered her. She argues that the finding that she consented to the slander conflicts with the finding that Moretti slandered her without legal excuse, and that the finding of consent is supported by no or insufficient evidence.

■ In connection with the slander question the court instructed the jury that slander is any defamatory statement orally communicated to a third person *without legal excuse* or qualified privilege. Hooper argues that if she consented to the defamation, as the jury in Question 3 found she did, the slanderous statements could not have been "without legal excuse" and therefore the issues conflict. We disagree. Consent is an affirmative defense to an action for slander. The jury could properly find that the statements were without legal excuse and were thus slanderous, yet find in another issue that a cause of action for those statements is

barred because they were authorized or made with consent. There is no conflict in those two findings. One simply finds there is a cause of action, while the other finds that the cause of action is barred by an affirmative defense.

Hooper also contends the jury finding of consent is supported by no or insufficient evidence. The question asked the jury if they found that Hooper "either consented to, authorized, wrote, or otherwise produced" the defamatory statements. The jury answered "yes." [1]

■ There is no testimony that Hooper wrote the statements or explicitly authorized or consented to them. There is, however, testimony and circumstantial evidence that we believe raises an inference that Hooper impliedly authorized or otherwise produced the defamatory statements. There is testimony from several sources that Hooper never denied the accusations against her when she was confronted with them; that she actually claimed she was engaged in "cult-like" activities; that she asked her supervisors to investigate her activities so the allegations of cultism could be "cleared up"; that she told the managers that she knew her actions could reasonably be considered as cultish; and that she orchestrated some of the activities and at least part of the investigation in an attempt to get Simpson fired. We are reluctant to overturn the finding of the jury on this question. They were entitled to judge the credibility and weight to be given the testimony and the inferences to be drawn therefrom. We therefore find there is sufficient evidence to support the jury's finding that Hooper authorized or otherwise produced the defamatory statements. One can consent to or authorize a defamation, and if she does so, that consent is an absolute bar to a defamation action. *Smith v. Holley,* 827 S.W.2d 433 (Tex.App.—San Antonio 1992, writ denied), and cases there cited.

The judgment correctly awards damages against Simpson and decrees that Hooper take nothing against Moretti. Because the

---

1. The consent issue was directed only to the slanderous statements. There was no contention made or jury question submitted on whether the

intentional infliction of emotional distress was consented to or produced by Hooper.

jury's failure to find that Simpson was in the scope of his employment when he committed the acts is against the great weight and preponderance of the evidence, we reverse the judgment and remand the cause to the trial court for the limited purpose of a retrial of the issue whether Pitney Bowes, under the doctrine of *respondeat superior,* is jointly and severally liable for the damages found by the jury to have been caused by Simpson's conduct.

It is so ordered.