**MINYARD FOOD STORES, INC., and Leslie W. Heflin, Appellants,**

v.

**Brenda Kay GOODMAN, Appellee.**

**No. 2–99–360–CV.**

Court of Appeals of Texas, Fort Worth.

June 28, 2001.

 

J. Steed, P.C.; C. Timothy Reynolds, for appellant.

Law Office of William Paul Rossini; William Paul Rossini, Dallas, Texas, for appellee.

Panel A: CAYCE, C.J., DAUPHINOT and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

### I. INTRODUCTION

Appellants Minyard Food Stores, Inc. (Minyard) and Leslie W. Heflin (Heflin) appeal the trial court's judgment in favor of Appellee Brenda Kay Goodman (Goodman) in an action for slander. The jury found that Heflin slandered Goodman in the course and scope of his employment at Minyard and awarded compensatory damages to Goodman in the amount of $325,000. Minyard brings three points challenging the legal and factual sufficiency of the evidence to support the jury's verdict and its corresponding damages award and complaining that the trial court improperly instructed the jury on the issue of ratification. Heflin argues in two points that the evidence is insufficient to support the jury's finding that he slandered Goodman and to support the jury's award of damages. We affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Goodman and Heflin were both employees of Minyard, working in store number 83 in Highland Village. Heflin was the store's manager and Goodman was the POS, or point of sale, coordinator, responsible for ensuring that merchandise was properly and accurately priced in the store. On January 15, 1998, Goodman was in her office at the store when Sheila Hughes, a checker, approached her

Ogletree, Deakins, Nash, Smoak & Stewart; Bryant S. McFall, Andrew T. Turner, Dallas, Texas, Law Offices of Joel

screaming, "You better pack your bags. I'm fixing to get you fired." Hughes pointed to Heflin and said to Goodman, "There's the man you've been having the affair with." Gary Flowers, the district manager for Minyard, arrived at the store shortly thereafter, having received a telephone message from Hughes saying that she wished to speak with him. Hughes told Flowers that Heflin had confided in her that he and Goodman had kissed and hugged on a few occasions. Hughes felt like Goodman had found out that Heflin told her this information, and that as a result, Goodman was "taking it out on" Hughes. Flowers also spoke with another employee that day, Alejandra Marks, who reported that Heflin had told her that he and Goodman kissed and hugged. Flowers then confronted Heflin, who admitted to kissing and hugging Goodman but denied having a "sexual relationship" with her. Heflin also admitted that he kissed Marks as well. Heflin gave a written statement to Flowers on January 15 outlining these admissions. Goodman told Flowers that she had allowed Heflin to rub her shoulders and that she had given him a "friendly hug," but she denied having ever kissed him.

Marks, Heflin, and Goodman were immediately transferred to different Minyard stores. Rumors spread among other Minyard employees that Heflin and Goodman had been transferred because they were having an affair. After the transfer, Goodman received four to six telephone calls per day from different individuals saying that they had heard she was transferred for having an affair with Heflin. One day, Goodman was buying her groceries at the Minyard store where she was working after the transfer when the checker commented, "I bet it was hard to have to go home and tell your husband you had been accused of having an affair." At that point, Goodman decided that she could no longer work for Minyard and turned in her resignation.

Goodman filed suit against Hughes, Marks, Heflin, and Minyard, seeking damages for slander. The case was submitted to a jury, which found that Goodman had been slandered by Heflin but not by Hughes or Marks. The jury further found that the slanderous statements of Heflin were made in the course and scope of his employment at Minyard. The jury assessed actual damages of $325,000. The trial court entered judgment on the verdict against Heflin and Minyard, jointly and severally.

## III. MINYARD'S APPEAL

### A. Sufficiency of the Evidence

In its first and third points, Minyard argues that the trial court erred in denying its motions for a directed verdict, judgment notwithstanding the verdict, and new trial because the evidence is legally and factually insufficient to support the jury's verdict. Specifically, Minyard contends that there is no evidence or insufficient evidence to show: (1) Heflin acted in the course and scope of his employment; (2) slander because Heflin's statements were substantially true; (3) harm to Goodman's reputation; or (4) ratification.

*Standard of Review—Legal Sufficiency*

■ Legal sufficiency points are addressed as either "no evidence" or "matter of law" points.[1] When the complaining party on appeal did not have the burden of proof at trial, we address the error as a "no evidence" point.[2] In determining a "no-evidence" point, we are to consider

1. *Gooch v. Am. Sling Co.,* 902 S.W.2d 181, 183 (Tex.App.—Fort Worth 1995, no writ).

2. *Id.* at 183–84.

only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.[3] If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law.[4]

■ A "no-evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.[5] There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.[6]

*Standard of Review—Factual Sufficiency*

■ As with legal sufficiency points, the standard of review on factual sufficiency points depends on who had the burden of proof at trial. When the party attacking the adverse finding did not have the burden of proof, the party must show that the evidence is insufficient to support the adverse finding.[7] An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.[8] We are required to consider all of the evidence in the case in making this determination.[9]

*Slander*

■ In suits brought by private individuals, truth is a complete, affirmative defense to slander.[10] The defendant in a defamation action, therefore, has the burden of proving that the allegedly slanderous statements were true. Because Minyard is attacking the legal sufficiency of the evidence to support an adverse answer to an issue on which it had the burden of proof at trial, Minyard must overcome two hurdles.[11] First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law.[12]

3. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

4. *Cazarez,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

5. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 362–63 (1960)).

6. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992).

7. *Gooch,* 902 S.W.2d at 184.

8. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

9. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

10. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995); *Randolph v. Walker,* 29 S.W.3d 271, 279 (Tex.App.—Houston [14th Dist.] 2000, pet. denied).

11. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991).

12. *Id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

■ Similarly, we review Minyard's assertion that the evidence is factually insufficient to support the jury's "failure to find" that Heflin's statements were true as an argument that such answer was "against the great weight and preponderance" of the evidence.[13] In reviewing a point asserting that an answer is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence.[14] So considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it.[15]

During the investigation, Heflin told Flowers that he had hugged and kissed Goodman on four or five occasions. Heflin also told Flowers that he had given Goodman a back rub and that there had been "heavy petting." Heflin testified, "I remember telling him that it was, like, a make-out session." According to Flowers, Goodman confirmed the back massage and also admitted that she hugged Heflin. Goodman, however, "emphatically denied" kissing Heflin. At trial, Goodman testified that she has never kissed Heflin. "I have hugged Mr. Heflin. I wouldn't say it was—I didn't mean anything by it . . . it was a friendly hug."

■ Minyard argues that Heflin's statements were substantially true and, therefore, not defamatory because Goodman acknowledges hugging Heflin and receiving a massage from him and "adding a kiss to this mix simply does not alter the nature of the relationship. The inferences a reasonable person would draw from the truth do not differ qualitatively from the inferences one might draw with the addition of a kiss." We find this argument unpersuasive. Based upon the evidence before it, the jury could have reasonably concluded that Heflin's statements to Flowers that he kissed Goodman and engaged in "heavy petting" and a "make-out session" with her were false. Furthermore, the jury's finding in this regard is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. It is the jury's duty to weigh the evidence and the credibility of the witnesses and to resolve any conflicts and inconsistencies in the testimony. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's finding that Heflin's statements were untrue and therefore slanderous.

### Course and Scope

■ An action is sustainable against a corporation for defamation by its agent if such defamation is referable to the duty owing by the agent to the corporation and was made in the discharge of that duty.[16] Neither express authorization nor subsequent ratification is necessary to establish liability.[17]

---

13. *Gooch*, 902 S.W.2d at 184.

14. *Ames v. Ames*, 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

15. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 244 S.W.2d at 661–62.

16. *Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex.1968).

17. *Id.*; *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 776 (Tex.App.—Texarkana 1995, writ denied).

Heflin's statements to Flowers that he had hugged and kissed Goodman were made in response to Flower's inquiry during the investigation of Hughes's complaint. Flowers testified that he is responsible for enforcing the rules and regulations of Minyard stores within his district. Flowers also stated that it is "flatly against the rules" for a store manager to have sexual relations with employees working under his supervision and that he is responsible for investigating such complaints and interviewing the parties involved. Heflin acknowledged that Flowers, as his immediate supervisor, was responsible for investigating problems at the store and that he was required to report to Flowers. Heflin's cooperation with an investigation conducted by upper management concerning allegations of employee wrongdoing was thus clearly within his authority and responsibility.

■■■■ Nevertheless, Minyard argues that if Heflin lied to Flowers about his relationship with Goodman, thereby slandering her, such slander was not authorized by Minyard, nor was it within the scope of Heflin's duties as a store manager. "To the contrary, Minyard expected Heflin to tell the truth." Indeed, Flowers testified that it is a violation of Minyard's policies for an employee to lie during these internal investigations. Heflin also acknowledged that he was obligated as an employee to be honest and candid with Flowers during the investigation. This evidence, however, is not dispositive of the issue before us. The fact that an employee does an act that is unauthorized or that would not be approved by his employer does not mean that the employee was out-

side the scope of his employment.[18] The employer is liable for the act of his employee, even if the specific act is unauthorized or contrary to express orders, so long as the act is done while the employee is acting within his general authority and for the benefit of the employer.[19] Here, it was within Heflin's general authority as manager of the store to answer questions posed by his superior concerning accusations that he was having an improper relationship with another employee. Indeed, it was his obligation to do so. Consequently, we conclude that there is some evidence from which a jury could reasonably find that Heflin was acting in the course and scope of his employment when he made the slanderous statements to Flowers. Likewise, we cannot say that the jury's finding in this regard is so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's verdict on this issue.

Minyard further argues that upholding the jury's finding of course and scope in this case "would do great violence to the protections of the investigative privilege" in the context of employer-employee communications. We disagree.

■■■■ Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse.[20] Legal excuse in a slander action includes the defense of qualified privilege.[21] A privilege will be granted to statements that occur under circumstances wherein any one of several persons having a common interest in a particular subject

---

**18.** *Hooper,* 895 S.W.2d at 777.

**19.** *Id.*

**20.** *Randall's Food Mkts.,* 891 S.W.2d at 646.

**21.** *Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85, 92 (Tex.App.—Dallas 1996, writ denied).

matter may reasonably believe that facts exist that another, sharing that common interest, is entitled to know.[22] A qualified privilege attaches to bona fide communications, oral or written, upon any subject in which the author or the public has an interest or with respect to which the author has a duty to perform to another owing a corresponding duty.[23] This privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose.[24] The effect of the privilege is to justify the communication when it is made without actual malice.[25]

■ An employer has a qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing.[26] Proof that a statement was motivated by actual malice existing at the time of publication, however, defeats the privilege.[27] In the defamation context, a statement is made with actual malice when it is made with knowledge of its falsity or with reckless disregard as to its truth.[28]

In the case now before us, the trial court instructed the jury on the defense of privilege in question number one of the charge:

A defamatory statement is not a slander if the statement is one not known to be false and not made with reckless indifference to the truth and comprehends a bona fide communication, oral

or written, upon any subject in which the author or the public has an interest or with respect to which he has a duty to perform on another owing a corresponding duty.

■ The jury found, in answer to question number one, that Heflin slandered Goodman. Based on the evidence before it, including Goodman's testimony, the jury could have reasonably concluded that Heflin made the statements to Flowers concerning his activities with Goodman with knowledge as to the falsity of these statements or with reckless disregard as to their truth. Thus, to the extent that Heflin's acts were privileged, the privilege was lost, and does not, therefore, operate to shield Heflin or Minyard from liability.[29]

*Harm to Reputation*

■ A defamatory oral statement may be slander per se or slander per quod.[30] Where a statement is defamatory per se, the law presumes actual damages and no independent proof of damage to reputation or of mental anguish is required.[31] For a defamatory oral statement to constitute slander per se, it must fall within one of four categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct.[32] The

22. *Id.*

23. *Dixon v. Southwestern Bell Tel. Co.*, 607 S.W.2d 240, 242 (Tex.1980).

24. *Id.*

25. *Id.*

26. *Randall's Food Mkts.*, 891 S.W.2d at 646.

27. *Id.*

28. *Id.*

29. *Hooper*, 895 S.W.2d at 777.

30. *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.).

31. *Id.*

32. *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex.App.—Corpus Christi 1997, writ denied); *Villasenor v. Villasenor*, 911 S.W.2d 411, 418 (Tex.App.—San Antonio 1995, no writ).

comment to the Restatement (Second) of Torts discusses what is meant by "imputations of sexual misconduct":

> The rule ... has been generally applied to any statement that imputes any form of unchastity to a woman, married or single, irrespective of whether the conduct charged constitutes a criminal offense. The rule applies to a statement charging a woman with specific acts of adultery, fornication or any other form of sexual intercourse with a man other than her husband, as well as to general charges of unchaste conduct. It does not apply to mere imputations of immodesty that do not imply unchaste conduct.[33]

■ Here, Heflin's statements to Flowers that he kissed, hugged, massaged, engaged in "heavy petting," and had a "make-out session" with Goodman, a married woman, could reasonably be interpreted as allegations of sexual misconduct on the part of Goodman. Accordingly, as these statements were defamatory per se, Goodman was not required to prove harm to her reputation. We, therefore, overrule Minyard's argument on this point.

### Ratification

Minyard also challenges the legal and factual sufficiency of the evidence to support the jury's finding in the exemplary damages phase of the trial that Minyard ratified Heflin's slander of Goodman. We note that whether Minyard ratified or authorized Heflin's acts is not determinative of its liability to Goodman under a theory of respondeat superior.[34] Such an inquiry is, however, pertinent in determining whether punitive damages may be awarded against Minyard for the acts of its employee.[35] In a separate point, Minyard argues that the trial court erred by instructing the jury on ratification during the exemplary damages phase of the trial. Because we agree that such instruction was in error, we do not address Minyard's sufficiency point on this issue.

### B. Jury Charge

In its second point, Minyard contends that the trial court improperly instructed the jury concerning ratification during the exemplary damages phase of the trial, thereby effectively denying Minyard its right to a bifurcated trial.

Question number two in the court's charge at the exemplary damages phase of the trial asked, "Do you find from a preponderance of the evidence that Minyard Food Stores, Inc. ratified Leslie Heflin's slander of Brenda Goodman?" The jury responded in the affirmative and proceeded to assess exemplary damages against Minyard in the amount of $500,000.

■ Punitive damages may be awarded against a corporation based on an act of an employee if the corporation or a manager of the corporation ratified or approved the act.[36] Minyard objected to question number two of the court's charge on the grounds that the ratification issue should have been submitted to the jury during the liability phase of the trial. Indeed, section 41.009 of the civil practice and remedies code provides as follows:

> (c) In the first phase of a bifurcated trial, the trier of fact shall determine:

33. Restatement (Second) of Torts § 574 cmt. b (1977).

34. *Texam Oil Corp.*, 436 S.W.2d at 130; *Syndex Corp. v. Dean*, 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied).

35. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997).

36. *Green Tree Fin. Corp. v. Garcia*, 988 S.W.2d 776, 779 (Tex.App.—San Antonio 1999, no pet.).

(1) liability for compensatory and exemplary damages; and

(2) the amount of compensatory damages.

(d) If liability for exemplary damages is established during the first phase of a bifurcated trial, the trier of fact shall, in the second phase of the trial, determine the amount of exemplary damages to be awarded, if any.[37]

■ Thus, we conclude that the trial court erred by instructing the jury concerning liability for exemplary damages during the second phase of the trial. Our inquiry, however, does not end here. To obtain reversal of a judgment based upon an error in the trial court, the appellant must show not only that there was, in fact, error but also that the error probably caused rendition of an improper judgment in the case or probably prevented the appellant from properly presenting the case to the appellate court.[38]

■ After receiving the jury's verdict at the second phase of the trial, the court announced that it "deems the $500,000 at this time to be superfluous there having been no malice on the part of the person having made the statement." The trial court then ordered joint and several liability against Heflin and Minyard in the amount of $325,000. The court's judgment awards only actual damages to Goodman in the amount of $325,000. Such damages were assessed by the jury during the first phase of the trial. Accordingly, because the trial court did not include an award of exemplary damages in its judgment, the improper submission of the ratification is-

sue during the second phase of the trial cannot be said to have caused the rendition of an improper judgment in this case. Such error, therefore, was harmless and does not mandate reversal of the judgment. We overrule Minyard's second point.

## IV. HEFLIN'S APPEAL

In his first point, Heflin argues that the evidence is legally and factually insufficient to support the jury's verdict because the allegedly slanderous statements were substantially true and because Goodman produced no evidence or insufficient evidence of harm to her reputation. As discussed above in connection with Minyard's appeal, a jury could reasonably conclude that Heflin's statements that he kissed, hugged, engaged in "heavy petting" with, and "made-out" with Goodman were not substantially true. Additionally, as explained above, such allegations could be construed as imputing sexual misconduct on the part of Goodman, thus making the statements slanderous per se and actionable without proof of damage to Goodman's reputation. Consequently, we overrule Heflin's first point.

■ Heflin complains in his second point that the evidence is insufficient to support the jury's award of compensatory damages to Goodman. Damages resulting from slander are purely personal and cannot be measured by any fixed rule or standard.[39] The amount awarded rests largely in the discretion of the jury and will not be disturbed unless it appears from the record to be excessive or the

37. TEX.CIV.PRAC. & REM.CODE ANN. § 41.009(c)– (d) (Vernon 1997).

38. TEX.R.APP.P. 44.1(a); *In re D.I.B.*, 988 S.W.2d 753, 756 n. 10 (Tex.1999); *Tex. Dep't of Human Servs. v. White*, 817 S.W.2d 62, 63 (Tex.1991).

39. *Fontenot Petro–Chem & Marine Servs., Inc. v. LaBono*, 993 S.W.2d 455, 460 (Tex.App.— Corpus Christi 1999, pet. denied); *Wal–Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 527 (Tex.App.—San Antonio 1996, writ denied).

result of passion, prejudice, or other improper influence.[40] In the case of slander per se, the law presumes actual damages, and no independent proof of damage to reputation or of mental anguish is required.[41]

■ Here, the jury awarded Goodman $325,000 in compensatory damages. In reaching this figure, the jury was instructed to consider three elements: (1) lost earnings; (2) mental anguish, humiliation, and embarrassment; and (3) damage to reputation and character. Because damages are presumed for two of these elements, we cannot conclude that the jury's award was excessive or the product of improper influence. We, therefore, overrule Heflin' second point.

## V. CONCLUSION

Having overruled all of Minyard's and all of Heflin's points on appeal, we affirm the judgment of the trial court with respect to both appellants.

CAYCE, C.J., filed a concurring and dissenting opinion.

CAYCE, Justice, concurring and dissenting.

I concur with the majority's decision to affirm the judgment of the trial court with respect to Heflin. I disagree, however, with the majority's conclusion that "there is some evidence from which a jury could reasonably find that Heflin was acting in the course and scope of his employment" with Minyard when he slandered Goodman. The "some evidence" to which the majority refers is Heflin's cooperation with Minyard's investigation of Flowers's allegations. Contrary to the majority's rationale, however, while it may have been

within the course and scope of Heflin's employment to cooperate with the investigation, there is no evidence that when Heflin lied about Goodman he did it to accomplish any objective for which he was employed. *See Lyon v. Allsup's Convenience Stores, Inc.*, 997 S.W.2d 345, 347–48 (Tex.App.—Fort Worth 1999, no pet.) (holding that supervising employee's defamation of another employee not within course and scope of employment because it was "not done to accomplish any object for which [the employee] was hired"). In fact, all of the evidence before us proves Heflin's lies about Goodman were deviations from his duties as a Minyard's employee.

Therefore, I would reverse the judgment against Minyard, render judgment that Goodman take nothing on her slander claims against Minyard, and affirm the judgment as to Heflin.

40. *Wal–Mart Stores,* 929 S.W.2d at 527.

41. *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612, 620 (Tex.App.—Corpus Christi 1992, writ denied).