**Opinion issued March 17, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-01065-CV

————————————

## LISA K. NEWTON, Appellant

## V.

## SCI TEXAS FUNERAL SERVICES, INC. D/B/A FOREST PARK EAST FUNERAL HOME, Appellee

---

### On Appeal from the 281st District Court
### Harris County, Texas
### Trial Court Case No. 2011-05614

---

## MEMORANDUM OPINION

Lisa K. Newton appeals from the trial court's order granting summary

judgment in favor of SCI Texas Funeral Services, Inc. d/b/a Forest Park East

Funeral Home ("SCI"), on Newton's claims for defamation and malicious

prosecution. In her first issue, Newton contends that the trial court erred because she presented summary judgment evidence raising a genuine issue of material fact regarding whether SCI defamed her. In her second and third issues, she asserts that issues of material fact exist with regard to the causation and probable cause elements of her malicious prosecution claim. We affirm.

## Background

SCI employed Newton as a funeral director at its Forest Park East Funeral Home in Webster, Texas. Newton's job duties included meeting with families to make funeral arrangements and selling funeral plans to its customers. To encourage funeral directors to actively sell floral arrangements, SCI paid its funeral directors a 10% commission on each flower sale ordered through Flowers and Co., a local vendor. At Forest Park East, funeral directors wrote floral orders on order forms that were then faxed to the vendor. Afterwards, the directors totaled their floral orders and attached the forms to their weekly time sheets which were used to tally the bonuses due for floral sales.

In early 2010, due to discrepancies discovered in employees' flower order forms, SCI conducted an internal audit of its funeral contracts, order forms, employee time sheets, and invoices from the local vendor. The audit revealed that several Forest Park East employees had committed fraud by submitting duplicate flower orders, altering flower order forms, and ordering flowers that families did

not pay for in order to receive a higher bonus than was actually due. The audit revealed that Newton was involved in five transactions in which flower order forms were submitted to Flowers and Co. for non-existent orders or the forms were unauthorized duplicates, and that she had received $225 in bonuses that she was not owed.[1]

Following the audit, Forest Park East's general manager, Foster B. Cook, and SCI's investigations manager, Buddy Downs, met with a law enforcement officer at the Webster Police Department and provided the officer with the audit report findings. Newton was subsequently arrested and charged with the misdemeanor offense of theft in the aggregate. The charge against Newton was later dismissed.

Newton filed suit against SCI alleging defamation, malicious prosecution, intentional infliction of emotional distress, and breach of contract. SCI moved for summary judgment on Newton's claims. On November 15, 2013, the trial court granted SCI's motion on Newton's claims for defamation, malicious prosecution, and intentional infliction of emotional distress, but denied its motion as to Newton's breach of contract claim. After non-suiting her remaining contract claim, Newton filed this appeal.

---

[1] The audit also revealed that Newton's colleague and friend, Juan Francisco Salas, had submitted fraudulent flower orders for which he had received nearly $5,000 in bonuses. Salas was fired and later charged with the state jail felony offense of theft to which he pleaded guilty.

## Discussion

In her first issue, Newton contends that the trial court erred in granting summary judgment on her defamation claim because she presented summary judgment evidence raising a genuine issue of material fact as to whether SCI defamed her. In her second and third issues, Newton argues that the trial court erred in granting summary judgment on her malicious prosecution claim because genuine issues of material fact exist regarding the elements of causation and probable cause.[2]

### A. Standard of Review

We review de novo a trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the party is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c). In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *See Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). If the summary judgment does not specify the grounds on which it

---

[2] Newton states in her brief that she is not appealing the portion of the trial court's order granting summary judgment on her intentional infliction of emotional distress claim. Therefore, we do not consider it on appeal.

4

was granted, the appealing party must demonstrate on appeal that none of the proposed grounds is sufficient to support the judgment. *Rogers v. Ricane Enter.*, 772 S.W.2d 76, 79 (Tex. 1989).

## B. Defamation

Newton contends that the trial court erred in granting summary judgment on her defamation claim because a genuine issue of material fact exists as to whether SCI defamed her. SCI argues that it was entitled to summary judgment on Newton's defamation claim because the undisputed evidence demonstrates that it never published any defamatory statements about her.

As a preliminary matter, we address Newton's contention that SCI moved for summary judgment on her defamation claim on no-evidence grounds. As support for her contention, she relies on SCI's statement in its summary judgment motion that "[h]ere, there is no evidence that SCI defamed Plaintiff." However, SCI attached summary judgment evidence to its motion, and its motion does not cite to Texas Rule of Civil Procedure 166a(i) except with regard to Newton's intentional infliction of emotional distress claim.[3] TEX. R. CIV. P. 166a(i) (stating that no-evidence motion for summary judgment is made "without presenting summary judgment evidence"). When it is not readily apparent that summary

---

[3] We note that in her summary judgment response, Newton states that SCI seeks a traditional summary judgment as to her claims for defamation, malicious prosecution, and breach of contract and a no-evidence summary judgment as to her intentional infliction of emotional distress claim.

judgment is sought on no-evidence grounds, "the court should presume that it is filed under the traditional summary judgment rule and analyze it according to those well-recognized standards." *Richard v. Reynolds Metal Co.*, 108 S.W.3d 908, 911 (Tex. App.—Corpus Christi 2003, no pet.) Accordingly, we construe SCI's motion with regard to Newton's defamation claim as asserting traditional grounds for summary judgment only. *See* TEX. R. CIV. P. 166a.

To prove a cause of action for defamation, a plaintiff must prove that (1) the defendant published a statement of fact about the plaintiff; (2) the statement was defamatory; (3) the statement was false; (4) the defendant acted negligently in publishing the false and defamatory statement; and (5) the plaintiff suffered damages as a result. *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 382 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Whether a communication is defamatory is a question of law. *See Musser v. Smith Protective Servs.*, 723 S.W.2d 653, 654 (Tex. 1987).

In its summary judgment motion, SCI argued that the evidence conclusively established that SCI did not make any defamatory statements about her. In support of its argument, SCI relied on the following excerpt from Newton's deposition testimony:

> Q:    Are you aware of any statements that anyone at SCI made to anyone that was false?

6

A: No.

In her summary judgment response, Newton pointed to her deposition testimony that other SCI employees and people in the funeral home industry knew that she had been suspected of theft as evidence that SCI had defamed her:

A: Well, many people in the funeral industry know this story, that I was accused of theft.

Q: How did they find out?

A: Well, people talk.

Q: Who has told—who has told you that they are aware that you were suspected of theft?

A: Several SCI employees. I mean, that's—I mean, you know, I'm sure that story went around the company.

Q: Who told you that they knew you had been suspected of theft?

A: Well, everyone that was left there knew that: Francine Jacks, Vicki Marshall, Susan Finley. I mean, I can name everybody that worked at Forest Park East.

Q: Anyone—

A: Once I left there and started to look for another job, it became apparent that the story had traveled to other funeral homes that were not SCI funeral homes.

Q: Why do you say that?

A: I applied for a job at one funeral home and was not disclosing that I had been fired. They asked me why I was leaving Forest Park East. I said I just didn't want to work there anymore. The manager that was interviewing me said, "Yeah, there's been a really big shake up over there. I heard there's been some people caught stealing."

7

Q: Who was it who told you that?

A: I don't remember.  It was Niday Funeral Home.
I ran into a man that used to work at Forest Park East.  He was the general manager when I was an apprentice.  He got out of the business.  Ran into him at Walmart, started chatting; and my daughter was with me.  And he said—I told him I didn't work there anymore.  And he said, yeah, he had heard there had been a big shake up at Forest Park East and—

Q: Did you say anything else?

A: No, I didn't elaborate that.  I didn't—I just said, Yeah, don't work there anymore.

Q: And who was that?

A: That was Rick Sloan.

Taking this evidence as true, it nevertheless fails to create a fact issue as to whether SCI defamed Newton.   Although Newton testified that other Forest Park East employees knew she was suspected of theft because the story presumably went around the company, this is not evidence that SCI told any of these employees that Newton committed theft.  As to her testimony regarding others in the funeral home industry, this is likewise not evidence that SCI defamed her.  For a statement to be actionable as defamation, it must refer to an ascertainable person.  *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 902 (Tex. App.—Dallas 2006, no pet.); *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.).  The statement must "point to the plaintiff and to no one else."  *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 894 (1960).

8

Newton's testimony that others told her that they had heard "some people [had been] caught stealing" and that there had been a "big shake up" at Forest Park East is not evidence that SCI told anyone that Newton was involved in the theft. *See Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting person is referred to in defamatory statement if person is named in statement or if those who know person would understand that statement was referring to person).

Newton also argues that SCI defamed her when it communicated an accusation of theft to the Webster Police Department. In support of her assertion, Newton points to SCI's statements in its summary judgment motion that "SCI met with the Webster Police Department and provided the police with the internal audit report findings that Plaintiff had stolen from the company," and that "[i]n this case there is no dispute that SCI informed the Webster Police Department that the company believed a theft occurred." Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). Thus, SCI's statements in its summary judgment motion amounted to a judicial admission. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (concluding defendant's statements in summary judgment response and counter-motion for summary judgment accepting plaintiff's assertion regarding

9

promissory note's acceleration date constituted judicial admission of acceleration date).

The parties, however, dispute whether these statements are defamatory. With regard to the first statement—"SCI met with the Webster Police Department and provided the police with the internal audit report findings that Plaintiff had stolen from the company"—SCI contends that because it is undisputed that the audit results provided to law enforcement contained accurate findings, this is not evidence that SCI defamed Newton. Notwithstanding the accuracy of the findings showing that Newton submitted flower order forms and received bonuses which were not due to her—an allegation that Newton does not dispute—the remainder of SCI's statement characterizes the results as "findings that Plaintiff had stolen from the company." With regard to SCI's second statement—"[i]n this case there is no dispute that SCI informed the Webster Police Department that the company believed a theft occurred"—SCI asserts that this is not evidence that SCI defamed her because SCI's expressions of opinion regarding the meaning of the audit results are not actionable in a defamation claim. However, the record does not reflect that SCI ever raised this argument before the trial court and, thus, we do not consider it. *See Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (citing *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the

10

motion or response.")). Taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor, as we must, we find this evidence sufficient to raise a genuine issue of material fact as to whether SCI defamed Newton when it made its report to the police. *See Nixon*, 690 S.W.2d at 548–49.

This conclusion, however, does not end our inquiry. SCI also argued in its motion that its communication to the Webster Police Department is protected by a qualified privilege absent a showing that it knew its statement was false or it made the statement with reckless disregard as to its truth. Newton contends that SCI may not avail itself of this defense because it did not plead it. However, an unpleaded affirmative defense may serve as the basis for a summary judgment when it is raised in the summary judgment motion, but the opposing party does not object in either its written response or before the rendition of judgment. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991). Here, although SCI did not plead the defense of qualified privilege in its answer to Newton's petition, Newton did not object in her summary judgment response or otherwise object before the trial court ruled on SCI's motion and, therefore, the trial court could consider it.[4]

---

[4]      Newton also argues that SCI was not entitled to assert this defense in its motion because a party may not raise an affirmative defense on which it has the burden of proof in a no-evidence motion. Having already concluded that SCI moved for

11

Defamatory statements are conditionally or qualifiedly privileged and therefore not actionable when "made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty." *TRT Dev. Co.-KC v. Meyers*, 15 S.W.3d 281, 286 (Tex. App.—Corpus Christi 2000, no pet.) (quotation omitted). A conditional or qualified privilege arises out of the circumstances in which the allegedly false statement is published in a lawful manner for a lawful purpose. *See Minyard Food Stores, Inc. v. Goodman*, 50 S.W.3d 131, 139–40 (Tex. App.—Fort Worth 2001), *rev'd in part on other grounds*, 80 S.W.3d 573 (Tex. 2002). This privilege applies to bona fide statements made in good faith under circumstances where the author believes that the public has an important interest in a particular subject matter requiring publication, or where the author believes that a person having a common interest in a particular subject matter is entitled to know the information. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).

However, proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege. *Id.*; *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In the defamation context, a statement is made with actual malice when the statement is

traditional summary judgment on Newton's defamation claim, we do not address this argument.

made with knowledge of its falsity or with reckless disregard as to its truth. *See Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771 (Tex. 1994). To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice. *See Jackson v. Cheatwood*, 445 S.W.2d 513, 514 (Tex. 1969); *Goodman v. Gallerano*, 695 S.W.2d 286, 287–88 (Tex. App.—Dallas 1985, no writ). A defendant can negate actual malice by presenting evidence that shows it did not publish the alleged defamatory statement with actual knowledge of any falsity or with reckless disregard for the truth. *Casso v. Brand*, 776 S.W.2d 551, 559 (Tex. 1989).

Here, SCI was required to conclusively establish that the alleged defamatory statement was made without malice. *See Johnson*, 891 S.W.2d at 646. In its summary judgment motion, SCI argued that it provided the audit report to the police to seek law enforcement assistance, and that it did not make any statement to the police that it knew was false or with reckless disregard as to its truth. In support of its argument, SCI attached Cook's affidavit stating, in relevant part:

- I, along with Buddy Downs, SCI's investigations manager, did meet with a police officer at the Webster Police Department and provided him with the findings of SCI's audit so he and/or the Harris County District Attorney's Office could determine whether they believed there was sufficient evidence to bring criminal charges against Plaintiff.

- Mr. Downs and I did not provide any information to the police that we knew to be false.

- I reviewed the duplicate flower order forms Plaintiff submitted and it created a reasonable concern that something improper was going on. Based on the facts and circumstances before me, I honestly and reasonably believed that Plaintiff had committed a crime—that being, theft.

Newton argues that the evidence raises a fact issue as to whether SCI acted with malice. In particular, Newton points to her affidavit in which she stated that during the time period in which she was alleged to have fraudulently submitted the flower order forms for which she received $225 in bonuses, she was owed over $1,000 in flower bonuses for flower sales that she had made on 22 contracts, but for which she had not turned in a flower order form. Newton also points to the fact that while SCI's audit of 90 to 100 of her files identified five files reflecting that she had received bonuses to which she was not entitled, it either ignored or deliberately overlooked the 22 files for which she was owed money but never submitted a payment request. Newton argues that this evidence raises a fact issue as to whether SCI acted with malice. We disagree.

Newton admits that in order to obtain a bonus for flower sales, she was required to submit an order form and that she did not expect to receive a bonus without first submitting the proper paperwork for each transaction. She further admits that she did not submit the required paperwork for any of the transactions for which she claims she was owed a bonus. Therefore, she was not entitled to receive the additional bonuses from SCI. Further, even assuming she made these

14

flower sales for which she did not receive a bonus, this evidence does not negate the fact that Newton received bonuses from SCI to which she was not entitled. Moreover, Newton has not presented any evidence to support her assertion that SCI ignored or deliberately overlooked the 22 additional sales while conducting its audit.

SCI conclusively established that its alleged defamatory statement to the Webster Police Department was made without malice and, therefore, was qualifiedly privileged. *See Jackson*, 445 S.W.2d at 514. The trial court did not err in granting summary judgment on Newton's defamation claim. We overrule her first issue.

## C. Malicious Prosecution

In her second and third issues, Newton contends that the trial court erred in granting summary judgment on her malicious prosecution claim because she presented summary judgment evidence raising a genuine issue of material fact on the elements of causation and probable cause. SCI argues the evidence conclusively negated these elements thus entitling it to summary judgment as a matter of law on Newton's claim.

Actions for malicious prosecution create a tension between the societal interest in punishing crimes and the individual interest in protection from unjustifiable criminal prosecution. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d

515, 520 (Tex. 1997). "Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct." *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex. 1994). To prevail on a claim of malicious prosecution, a plaintiff must establish the following: (1) commencement of a criminal prosecution against the plaintiff; (2) initiated or procured by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the defendant's lack of probable cause to initiate the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. *Richey*, 952 S.W.2d at 517. Because it is dispositive, we begin with Newton's third issue in which she contends that SCI lacked probable cause to initiate or procure criminal prosecution against her.

Probable cause is "'the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the . . . [complainant], that the person charged was guilty of the crime for which he was prosecuted.'" *Id.* (quoting *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983)). The question is whether a reasonable person would believe that a crime had been committed, given the facts that the complainant, before initiating the criminal proceedings, honestly and reasonably believed to be true. *Richey*, 952 S.W.2d at 517. There is an initial presumption that the defendant acted reasonably and in

16

good faith and had probable cause to initiate the proceedings. *Id.* That presumption disappears once a plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause. *Id.* at 518. The burden then shifts to the defendant to offer proof of probable cause. *Id.* Once a citizen has probable cause to report a crime, there can be no malicious prosecution, even if the subsequent report fails to fully disclose all relevant facts. *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 470 (Tex. 2004).

In its summary judgment motion, SCI argued that even if it procured Newton's prosecution, the evidence conclusively established that it had probable cause to do so. In support of its argument, SCI relied on Cook's affidavit in which he stated that (1) in early 2010, SCI discovered that there were some discrepancies in employees' flower order forms submitted to obtain the ten present bonus—in particular, the expenses for the flowers (i.e., bonus payments and the amount spent on flowers) were higher than the income for the flower account; (2) an internal audit team reviewed funeral contracts, flower order forms, time sheets, and invoices from Flowers and Co. and determined that several Forest Park East employees were committing fraud by claiming larger amounts of flower sales than were actually ordered; (3) Salas, Newton's colleague and friend, admitted that he had stolen money from the company through the submission of fraudulent flower

17

order forms; (4) Newton submitted duplicate flower order forms for which she received bonuses that she was not owed; (5) on one occasion Salas and Newton both submitted a flower order form to obtain a bonus for a sale to the same customer. Cook further attested "I reviewed the duplicate flower order forms Plaintiff submitted and it created a reasonable concern that something improper was going on. Based on the facts and circumstances before me, I honestly and reasonably believed that Plaintiff had committed a crime—that being, theft." SCI also pointed to Newton's deposition testimony stating that she could understand how someone would look at duplicate order forms and be concerned.

In her summary judgment response, Newton argued that SCI lacked probable cause because the evidence showed that a reasonable person would not have believed that a crime had been committed. Newton points to Cook's deposition testimony regarding two of the five accounts on which she received a bonus she was not owed. The first account included a flower order form submitted by Newton marked "revised," and the second account contained two duplicate flower order forms attached to Newton's time sheet. With regard to the document marked "revised," Cook testified as follows:

> Q: So when [Newton]—when she or somebody wrote that on there, do you take from that an intent to deceive?
>
> A: I'll answer it this way. I didn't prepare this document. So truthfully, I can't—I can't answer that because they prepared the document. I mean, I can see what you're saying. I can read. But to

18

answer your question, I wouldn't be able to answer your question because I didn't take part in preparation of these documents.

Q: All right.  But you take my point.

A: I take your point, yeah.

With regard to the second account containing two duplicate flower order forms attached to Newton's time sheet, Cook testified as follows:

Q: —does that suggest to you she was trying to get paid twice when she put them on top of each other on the same time sheet?

A: If it's the same flower order with the same contract number, I could see where they could think that, yeah.  If that's—if that's what it was.

Q: You could see where they would think that?

A: Yeah, I do.

This evidence does not raise a fact issue as to whether a reasonable person would have believed that a crime had been committed.

Newton also argues that SCI lacked probable cause because it must have known after completion of its audit that Newton was owed more than $1,000 for flower orders on 22 other accounts.  However, as we previously noted, there is no evidence that SCI knew of these additional orders and, moreover, Newton was not entitled to payment for these orders because she did not submit the appropriate paperwork.

19

Newton also argues that the presumption of probable cause disappeared because she presented evidence of SCI's improper motive. In support of her argument, Newton points to the following excerpt from her deposition testimony:

Q; Do you think Foster Cook was trying to harm you?

A: I think prior to them questioning me, once they found out that, you know, an employee was doing things to acquire money that he wasn't owed and he just left, I believe they were out for somebody. I do.

Q: Why do you say that?

A: Because I'm sure Charles [Wilson] and Foster [Cook] had their jobs on the line is what I think. I'm sure they were being questioned as to how was an employee able to do that.

This evidence, however, contains no facts but only conclusory statements that are no more than "mere surmise or suspicion" about SCI's motives. Such statements do not create an issue of fact. *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion. Conclusory statements . . . . are not proper as summary judgment proof if there are no facts to support the conclusion.")

The undisputed evidence conclusively shows that SCI had probable cause to initiate or procure the prosecution of Newton: (1) the internal audit revealed that several Forest Park East employees were committing fraud by claiming larger amounts of flower sales than were actually ordered (2) Newton admitted that she

20

had submitted duplicate flower order forms and received bonuses that she was not owed; (3) Cook stated he honestly and reasonably believed that Plaintiff had committed theft based on the facts before him; and (4) Newton understood how SCI could be concerned about duplicate flower orders. Therefore, SCI was entitled to summary judgment on Newton's malicious prosecution claim. *See Richey*, 952 S.W.2d at 518–20; *Arrendondo v. Rodriguez*, No. 14-09-00857-CV, 2011 WL 304070, at *8 (Tex. App.—Houston [14th Dist.] Jan. 27, 2011) (mem. op.) (not designated for publication). We therefore overrule Newton's third issue and do not reach her second issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.