NUMBER 13-09-00421-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

CORPUS CHRISTI
- EDINBURG

                                                        
             

 

ESTER SALINAS,                                                                         Appellant,

 

v.

 

PAT TOWNSEND AND NORBERTO
SALINAS,                       Appellees.

                                                                      

 

On appeal from the 206th District Court

of Hidalgo County, Texas.

                            
                                         

 

MEMORANDUM OPINION

 

Before Justices Garza, Benavides, and Wittig[1]

Memorandum Opinion by Justice Garza

 

Appellant, Ester Salinas, was found liable for
slandering appellees, the current and former mayors of Mission, Texas. 
Appellant challenges the judgment by six issues, contending that:  (1) her
speech was constitutionally protected; (2) her statements were not, as a matter
of law, unambiguous defamatory statements of fact; (3) appellees did not prove
mental anguish; (4) appellees did not prove that her statements were made with
actual malice; (5) there was a fatal variance between the pleadings and the
proof; and (6) the trial court erred in admitting certain evidence.  We affirm
in part and reverse and render in part.

I.  Background

            Appellee Pat
Townsend was mayor of the city of Mission, Texas from 1984 to 1992 and was its
city manager from 1995 to 2001; appellee Norberto Salinas (“Salinas”) is the
city’s current mayor.  Appellant is a self-described community activist
representing the interests of residents affected by chemical contamination at
the former Hayes-Sammons pesticide plant in Mission.[2] 
According to appellant, she became concerned about chemical contamination
in 1998, when her son alerted her to the presence in their neighborhood of
“[m]en dressed in scientific biohazardous [sic] outfits with tanks on their
backs and total protection on their faces and their bodies.”  Appellant learned
that these “men in white” were removing “toxic dirt” from various sites around
Mission; she also discovered that the areas had been designated as “Superfund”
sites by the Environmental Protection Agency (“EPA”).[3]

            Over the course of
the next decade, appellant performed extensive research on the history of the
Hayes-Sammons plant and the effects of chemical contamination on the area’s
land and its inhabitants.  She, along with a committee of other affected citizens,
eventually learned that thousands of people living in the Mission area were
suffering from various “abnormal” illnesses, that hundreds of the residents’
children were stillborn, and that many other area children were born with birth
defects.  As a result of her research and investigation, appellant developed a
fervent belief that these health problems were caused by chemical contamination
emanating from the Hayes-Sammons plant, and that city officials were negligent
in failing to notify Mission residents prior to 1998 that their land was
contaminated.  Appellant further believed that city officials, including both
appellees, failed to adequately address the crisis because they did not arrange
for the affected citizens to be relocated from the contaminated areas.

            In 1999, appellant
retained an attorney to represent her in potential litigation against
Hayes-Sammons’s successor entities and other suppliers that contributed
chemicals to the sites in question.  Appellant entered into a “fee sharing
agreement” with the attorney whereby she would purportedly earn a percentage of
the attorney’s fees resulting from the representation of any plaintiffs that
appellant referred to him.  Appellant later learned that this “fee sharing
agreement” was unenforceable because it contravenes the ethical rules governing
Texas attorneys.  See Tex.
Disciplinary R. Prof’l Conduct 5.04(a), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit.
G, app. A (Vernon Supp. 2010) (providing generally that “[a] lawyer or law firm
shall not share or promise to share legal fees with a non-lawyer”). 
Nevertheless, according to appellant, she eventually received at least $30,000
in payments from the attorney; appellant characterized these payments as
reimbursement for expenses she incurred in investigating and preparing the case
against the chemical companies.

            In 2000,
appellant, at the advice of counsel, recommended that the city retain the
services of Dr. Robert K. Simon, a toxicologist, to perform testing at the
contaminated sites.  The city acceded to the recommendation.  However,
Townsend, city manager at the time, was skeptical of Dr. Simon’s work and
received the city council’s permission to hire a second toxicologist, Dr. K.C.
Donnelly, to do additional testing.  According to Townsend, appellant “wasn’t
happy” about the hiring of a second toxicologist.  Townsend further testified
that, to his knowledge, Dr. Simon “never delivered the results of the tests”
that the city had paid him to perform.

            Appellant’s
obvious frustration and anger at city officials led her to make the four
statements that are the subjects of the underlying suit.  The first of these
statements was made at a Mission city council meeting on March 24, 2003.  At
this meeting, members of the public were invited to comment on the proposed
appointment of Townsend to lead the Mission Economic Development Authority
(“MEDA”).  Appellant publicly made the following statement there:

Let
me say my family and friends are severely opposing the outrageous nomination of
Mr. Pat Townsend as Interim CEO/President of this MEDA or any position in the
City of Mission.  The days of slavery and corruption and abuse in South Texas
have finished.  This man in the past has known of pollution and has known of
contamination and has betrayed the citizens that he was supposed to have
represented.  He has acted with me and many people of the South side with
negligence for the name of self-profit and personal political gratification. 
Many families in the Southwest side have come to me to complain to me about the
way the infrastructure has been.  They went to him about sewage and water and
one family came to me with a deed from 1930 how Shary Union Pacific stole the
land way [sic], to Mr. Pat Townsend asking for his help and what did he do
instead of helping the families he yelled, insulted, and suppressed the truth
for the victims[.  O]n many occasions he has treated us with negligence which
is heartless and malice [sic] behavior. . . .  Mr. Townsend dwelled on Shar[]yland,
Cimarron and factories to further pollute Mission.  He was instrumental in
inflicting human sufferage [sic] and sever[e] property damage.  He had little
respect for human health in environmental damages of 3,000 citizens.  He
resigned his former position as City Manager due to high stress levels and the
way he treated Dr. Simon or was it because of guilt.  My recommendation is that
you be fair and you deal with proper [sic] in the total development of our
community and not insult us with this man who has caused so many additional
health problems, property damage and emotional distress.  I, my family and
friends are in opposition to this man being recommended for this position.

 

            The second
statement was made by appellant at an August 25, 2005 city council meeting[4]:

Good
afternoon Mayor and Members of the Council and public.  Ester Pena Salinas, we
the people from the super fund areas demand justice, justice for all where is
it[?]  Congratulation[s] to Miss Flores and I wish the five hundred . . .
babies who were born died [sic] also had that opportunity to live and breath[e]
unfortunately five hundred . . . of our babies were lost and nobody seems to
care and if they do care there is no justice.  It’s unfortunate what that is [sic]
has taken decades for EPA and all entities to come in and say that they are
going to see if there is any contaminations [sic] stop play[ing] games with our
lives.  We are the people from the super funds and it[’]s time for[]
relocation.  You[] all paid an ex city [council] member a hundred and
eighty-five thousand[] for him to resign[,] well we want to be relocated.  You
are paying for additional council where there is TL TML funds[,] why did you
use those funds, why did you have to hire someone at two hundred dollars an
hour[?  S]ome of my people got a hundred and twelve dollars and you know what
justice day will come and some of you will be judged for the way you have
stolen and lied and killed[.]  But yet you continue to act as if you are in
denial and I know you are timing me sir.

 

            The third
statement forming the basis of the slander suit was made by appellant during an
interview broadcast on local television in October of 2008.  During that
interview, appellant stated:  “So, we have to go fight in Court because even
the mayor in La Joya told me that Norberto Salinas went to talk to him to say
that they were going to kill me.”[5] 
Billy Leo, the mayor of La Joya, Texas, testified that he could not remember
whether or not he made the statement attributed to him by appellant.

            Fourth, and
finally, Salinas alleged in his sixth amended plea in intervention that
appellant “called him a drug dealer and said th[at] he is politically
corrupt.”  The evidence related to this allegation included testimony by Jose
Montes, a Mission resident.  Montes testified that appellant, upon seeing
Salinas’s campaign poster on Montes’s house, told Montes that Salinas was “a
big rat.”  When Montes was asked at trial what he understood appellant to mean
by those words, he stated that “a big rat is—well, I understand it’s like
a—somebody big and like—well, you know, control of something, you know. . . . 
Well, like somebody, you know—rat means like somebody stealing or something.” 
There was no other evidence adduced as to the meaning of the words “big rat.” 
Domingo De La Garza, another resident of Mission, testified that appellant once
called Salinas a “drug dealer” at a grocery store in front of “six or seven”
other people.  According to De La Garza, appellant “told me loud enough for
people to hear what she was telling me.”  De La Garza testified that he had
heard appellant call Salinas a “drug Lord” or “drug dealer” in front of other
people “about three or four times.”[6]

            Townsend sued
appellant shortly after the first statement was made in 2003, and Salinas
intervened in the suit as a plaintiff in 2005.[7] 
Both Townsend and Salinas alleged defamation and requested actual and exemplary
damages.  At trial, appellant testified that she did make the statements
attributed to her at the city council meetings and on the television interview,
but she denied that she ever called Salinas “corrupt” or a “drug dealer.”  After
the parties rested,[8]
the trial court found as a matter of law that the March 24, 2003 statement was
defamatory per se as to Townsend and that the remaining three statements were
defamatory per se as to Salinas.[9] 
Accordingly, the jury was not asked whether the statements were defamatory;
rather, the only questions submitted to the jury were whether each statement
was false and whether each statement was made with actual malice.[10] 
The jury was also asked whether appellant actually stated that “Norberto
Salinas is a drug dealer and corrupt politician.”  The jury answered all
questions in the affirmative and awarded $10,000 in damages to Townsend and
$30,000 in damages to Salinas.  This appeal followed.[11]

II.  Applicable Law

            A statement is
defamatory if it tends to injure one’s reputation, exposing one to public
hatred, contempt, or ridicule, or financial injury, or to impeach any person’s
honesty, integrity, virtue, or reputation.  Montemayor v. Ortiz, 208
S.W.3d 627, 651 (Tex. App.–Corpus Christi 2006, pet. denied); Austin v. Inet
Techs., Inc., 118 S.W.3d 491, 496 (Tex. App.–Dallas 2003, no pet.); see Restatement (Second) of Torts § 559
(1977) (“A communication is defamatory if it tends to so harm the reputation of
another as to lower him in the estimation of the community or to deter third
persons from associating or dealing with him.”).  Whether a statement is
defamatory is initially a question of law for the trial court and depends on
whether a person of ordinary intelligence[12]
would perceive the entire statement as so affecting the reputation of the
plaintiff.  See Carr v. Brasher, 776 S.W.2d 567, 569-70 (Tex. 1989); Musser
v. Smith Protective Servs., Inc., 723 S.W.2d 653, 655 (Tex. 1987).  In
determining this question, the court must construe each statement as a whole,
in light of surrounding circumstances.  Turner v. KTRK Television, Inc.,
38 S.W.3d 103, 114 (Tex. 2000); Musser, 723 S.W.2d at 654-55.  If the
statement, seen in this light, has but one clear and obvious meaning, then no
further inquiry is necessary.  Gray v. HEB Food Store No. 4, 941 S.W.2d
327, 329 (Tex. App.–Corpus Christi 1997, writ denied).  But when a publication
is of ambiguous or doubtful import, the jury must determine its meaning.  New
Times, Inc. v. Isaacks, 146 S.W.3d 144, 155 (Tex. 2004); Diaz v. Rankin,
777 S.W.2d 496, 499 (Tex. App.–Corpus Christi 1989, no writ).

            Slander is a
defamatory statement orally communicated or published to a third party without
legal justification or excuse.  Randall’s Food Mkts., Inc. v. Johnson,
891 S.W.2d 640, 646 (Tex. 1995); Kelly v. Diocese of Corpus Christi, 832
S.W.2d 88, 91 (Tex. App.–Corpus Christi 1992, writ dism’d w.o.j.).  To recover
for slander, a plaintiff must prove the following elements:  (1) an oral
defamatory statement; (2) falsity of the statement[13];
(3) reference in the statement to an ascertainable person; and (4) publication
of the statement to someone other than the allegedly defamed person.  Reeves
v. Western Co. of N. Am., 867 S.W.2d 385, 393 (Tex. App.–San Antonio 1993,
writ denied).  To be actionable, a statement must constitute or contain an
assertion of an objectively verifiable fact.  Am. Broad. Cos., Inc. v. Gill,
6 S.W.3d 19, 29 (Tex. App.–San Antonio 1999, pet. denied) (citing Burch v.
Coca-Cola Co., 119 F.3d 305, 325 (5th Cir. 1997)).  “[A] plaintiff can
bring a claim for defamation when discrete facts, literally or substantially
true, are published in such a way that they create a substantially false and
defamatory impression by omitting material facts or juxtaposing facts in a
misleading way.”  Turner, 38 S.W.3d at 115.

            If the trial court
finds that the statement is unambiguous and not reasonably capable of
defamatory meaning, then summary judgment for the defendant is proper.  Wheeler
v. New Times, Inc., 49 S.W.3d 471, 474 (Tex. App.–Dallas 2001, no pet.). 
Otherwise, the statement will be classified either as slander per se or slander
per quod.[14] 
Minyard Food Stores, Inc. v. Goodman, 50 S.W.3d 131, 140 (Tex. App.–Fort
Worth 2001), rev’d on other grounds, 80 S.W.3d 573 (Tex. 2002).  For an
oral statement to constitute slander per se, it must fall within one of four
categories:  (1) imputation of the commission of a crime; (2) imputation of a
loathsome disease; (3) injury to a person’s office, business, profession, or
calling; or (4) imputation of sexual misconduct.  Id. (citing Gray,
941 S.W.2d at 329; Villasenor v. Villasenor, 911 S.W.2d 411, 418 (Tex.
App.–San Antonio 1995, no writ)).  If a statement is slanderous per se, no
independent proof of damage to the plaintiff’s reputation or of mental anguish
is required, as the slander itself gives rise to a presumption of general
damages.[15] 
Bentley v. Bunton, 94 S.W.3d 561, 604 (Tex. 2003); Mustang Athletic
Corp. v. Monroe, 137 S.W.3d 336, 339 (Tex. App.–Beaumont 2004, no pet.)
(citing Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 374
(Tex. 1984) (op. on reh’g)).  If the statement is not slanderous per se, the
plaintiff must plead and prove special damages—i.e., some form of pecuniary or
economic loss—in order for the statement to be actionable as slander per quod. 
Kelly, 832 S.W.2d at 94; Stearns v. McManis, 543 S.W.2d 659, 661-62
(Tex. Civ. App.–Houston [1st Dist.] 1976, writ dism’d); see Minyard Food
Stores, 50 S.W.3d at 140.  Here, neither Townsend nor Salinas have alleged
or requested special damages.  Moreover, appellees have not asserted that
appellant’s statements imputed disease or sexual misconduct, or injured their
office, business, profession, or calling.  See Minyard Food Stores, Inc.,
50 S.W.3d at 140.  Accordingly, the statements at issue in this case are
actionable only if they are properly classified as slanderous per se by virtue
of having imputed the commission of a crime.  See id.

            Finally, if suit
is brought by a public figure or public official, as here, the plaintiff must
prove by clear and convincing evidence that the defendant acted with “actual
malice.”[16]
 Turner, 38 S.W.3d at 114 (citing Bose Corp. v. Consumers Union,
466 U.S. 485, 510-11 (1984)).  In the context of defamation, “actual malice” is
a term of art distinct from traditional common-law malice and does not include
ill will, spite, or evil motive.  Alaniz v. Hoyt, 105 S.W.3d 330, 346
(Tex. App.–Corpus Christi 2003, no pet.) (citing Hagler v. Proctor &
Gamble Mfg. Co., 884 S.W.2d 771, 771 (Tex. 1994) (per curiam); Wal-Mart
Stores, Inc. v. Lane, 31 S.W.3d 282, 291 (Tex. App.–Corpus Christi 2000,
pet. denied)).  Instead, “‘[a]ctual malice’ requires proof that the defendant
made the statement ‘with knowledge that it was false or with reckless disregard
of whether it was true or not.’” Isaacks, 146 S.W.3d at 162 (quoting Huckabee
v. Time Warner Entm’t Co., 19 S.W.3d 413, 420 (Tex. 2000)).

III.  Discussion

A.        Constitutional
Protection

            By her first
issue, appellant argues that her statements are protected by the United States
and Texas Constitutions.  See U.S.
Const. amend. I; Tex. Const. art.
I, § 8 (“Every person shall be at liberty to speak, write or publish his
opinions on any subject, being responsible for the abuse of that privilege . .
. .”).  In support of this assertion, appellant points to the following
oft-cited quotations derived from United States Supreme Court cases:

[T]he
Constitution protects “statements that cannot ‘reasonably [be] interpreted as
stating actual facts’ about an individual” made in debate over public matters
in order to “provide[] assurance that public debate will not suffer for lack of
‘imaginative expression’ or the ‘rhetorical hyperbole’ which has traditionally
added much to the discourse of our Nation[.]”

 

Bentley, 94 S.W.3d at 580 (quoting Milkovich v. Lorain
Journal Co., 497 U.S. 1, 20 (1990)).

“The
fact that society may find speech offensive is not a sufficient reason for
suppressing it.  Indeed, if it is the speaker’s opinion that gives offense,
that consequence is a reason for according it constitutional protection.  For
it is a central tenet of the First Amendment that the government must remain
neutral in the marketplace of ideas.”

 

Isaacks, 146 S.W.3d at 154 (quoting Hustler Magazine v.
Falwell, 485 U.S. 46, 55-56 (1988)).  These statements, however, simply
reflect and expound upon the well-established tenet of law that, in order for a
statement to be considered capable of defamatory meaning, it must be, or imply,
a false statement of objective fact.  See Gill, 6 S.W.3d 19, 29; see
also Pisharodi v. Barrash, 116 S.W.3d 858, 863 (Tex. App.–Corpus Christi
2003, pet. denied) (finding a statement accusing plaintiff of assault to be
capable of defamatory meaning even though couched in terms of defendant’s
“professional opinion”).  In Milkovich, the United States Supreme Court
rejected the notion that the First Amendment provides independent protection
for defamatory statements which are categorized as “opinion” as opposed to
“fact.”  497 U.S. at 17-22.  Instead, the Court noted that expressions of
“opinion” may often imply actionable assertions of objective fact.  Id.
at 18.  For example,

[i]f
a speaker says, “In my opinion John Jones is a liar,” he implies a knowledge of
facts which lead to the conclusion that Jones told an
untruth. . . .  Simply couching such statements in terms of
opinion does not dispel these implications; and the statement, “In my opinion
Jones is a liar,” can cause as much damage to reputation as the statement,
“Jones is a liar.”

 

Id. at 18-19.

            Additionally, to
the extent that appellant is arguing that her statements before the city
council are privileged or entitled to a different level of scrutiny because
they were made in the course of an official governmental proceeding, she is
incorrect.  While communications made in the due course of a judicial
proceeding are privileged and may not serve as the basis of a defamation
action, see James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982), there is no
similar privilege recognized for statements made in the context of legislative,
executive, or administrative functions of government.  Therefore, the mere fact
that two of appellant’s allegedly defamatory statements were made during
official city government proceedings does not shield her from liability.

            Appellant’s first
issue is overruled.

B.        Per Se Defamation
and Actual Malice

            By her second
issue, appellant argues that the trial court erred by finding all four
statements to be per se defamatory.  By her fourth issue, she contends that the
evidence adduced at trial was legally and factually insufficient to establish
that she made the statements at issue with actual malice.  We will consider
these issues together as they apply to each of the allegedly defamatory
statements.

As noted, the
statements will be actionable only if they are deemed to be slanderous per se
by virtue of having imputed to appellees the commission of a crime.  See
Minyard Food Stores, Inc., 50 S.W.3d at 140 (listing categories of
statements that are per se defamatory); Kelly, 832 S.W.2d at 94 (slander
plaintiff must plead and prove special damages in order to recover for
defamation per quod); Mitre v. Brooks Fashion Stores, Inc., 840 S.W.2d
612, 619 (Tex. App.–Corpus Christi 1992, writ denied), overruled on other
grounds by Cain v. Hearst Corp., 878 S.W.2d 577, 578 (Tex. 1994) (noting
that a statement that unambiguously and falsely imputes criminal conduct to plaintiff
is defamatory per se).  However, the charge of violating a criminal statute
need not be made in a technical manner such as might be required of an
indictment.  Mitre, 840 S.W.2d at 620.  It is sufficient to constitute
slander per se if, in hearing the statement, an ordinary person would draw a
reasonable conclusion that the complaining party was being accused of violating
some criminal law.  Id.

 

            1.         Townsend

            We first consider
appellant’s statement at the 2003 city council meeting, which the trial court
found to be defamatory per se as to Townsend.  At that meeting, appellant
stated that she was objecting to the appointment of Townsend to lead a local
economic development commission.  In expressing her objection, appellant made a
number of pointed criticisms that the trial court determined had implied that
Townsend had engaged in criminal behavior.  These statements included the
following:  “The days of slavery and corruption and abuse in South Texas have
finished”; “[Townsend] has acted . . . with negligence for the name of
self-profit and personal political gratification”; “Townsend dwelled on Shar[]yland,
Cimarron and factories to further pollute Mission”; “[Townsend] was
instrumental in inflicting human sufferage [sic] and sever[e] property damage”;
and “[Townsend] has caused so many additional health problems, property damage
and emotional distress.”

            Appellant argues
that these statements constitute mere rhetorical hyperbole, which is not
actionable.  See Gill, 6 S.W.3d at 30 (“‘Rhetorical hyperbole’ is
‘extravagant exaggeration’ ‘employed for rhetorical effect.’”).  She further
contends that her words were constitutionally protected in part because of the
forum in which they were uttered.  We have noted that the law recognizes no
general privilege for remarks made in governmental proceedings.  However, we
are required to evaluate the nature of a statement in light of all surrounding
circumstances.  Turner, 38 S.W.3d at 114; Musser, 723 S.W.2d at
654-55.  Here, those circumstances include the fact that appellant was speaking
in a public forum about an issue—and concerning a public official—with which
the audience was intimately familiar.  Under such circumstances, even assuming
that appellant’s remarks unambiguously referred to Townsend and expressed
objectively verifiable facts, we do not believe that a person of “ordinary
intelligence” would have concluded from those words that Townsend was being
accused of violating a criminal law.  See Mitre, 840 S.W.2d at 620. 
That is, an ordinary person hearing appellant’s remarks would not have
understood them as meaning that Townsend actually engaged in slavery or theft;
instead, such a person would have understood the remarks as harsh—and possibly
unfounded—criticisms of Townsend’s performance in his official roles as mayor
and as city manager.  In reaching this conclusion, we are cognizant of the
“profound national commitment to the principle that debate on public issues
should be uninhibited, robust, and wide-open, and that it may well include vehement,
caustic, and sometimes unpleasantly sharp attacks on government and public
officials.”  Isaacks, 146 S.W.3d at 154 (citing N.Y. Times v.
Sullivan, 376 U.S. 254, 270 (1964)).

            We are also
mindful that certain public officials—particularly, those in policymaking
positions such as mayor—are prone to receiving hyperbolic criticism precisely
because of the power they wield and the often momentous consequences of their
official decisions.  For example, a citizen may accuse a legislator of being a
“murderer” because that legislator supports the death penalty.  There, the
citizen is relying on an objective fact—that the legislator supports a policy
that may lead to the deaths of individuals—but is embellishing that fact by ascribing
personal responsibility to the legislator for any lives lost as a result of
that policy.  In any case, no reasonable person listening to the citizen’s
statement could believe that the legislator had just been accused of committing
a crime.  Instead, an ordinary person would believe that the citizen merely
disagreed with the legislator’s policy choices and chose to express that
disagreement in unusually stark terms.  This analogy also holds for matters
less weighty than the morality of capital punishment—for example, a citizen may
call a county commissioner a “thief” because he or she advocates higher taxes;
or, a citizen may call a judge a “crook” because of some perceived bias.  In
both cases, the citizen uses words that, under normal circumstances, imply the
commission of a crime.  But, given the public status of the individuals made
the subject of those statements, no ordinary listener—i.e., no one that
“exercises care and prudence,” Isaacks, 146 S.W.3d at 157—would
reasonably believe that the speaker was actually making accusations of criminal
behavior.  Without any further elaboration, such remarks instead reflect only
the citizen’s strong disagreement with the officials’ lawful exercise of
discretion in their role as public servants.  See Greenbelt Coop. Publ’g
Ass’n v. Bresler, 398 U.S. 6, 13-14 (1970) (finding an accusation of
“blackmail” not to be defamatory per se because, among other things, the
plaintiff was a public figure, the subject matter was well-known, and the
statement was made at a city council meeting).

            Similarly, given
Townsend’s former status as mayor and city manager, and given the
well-understood context surrounding the Hayes-Sammons affair, no ordinary
listener would perceive appellant’s remarks at the 2003 city council meeting as
having charged Townsend with committing a crime.  The only reasonable
conclusion an ordinary listener could have drawn from those remarks is that
appellant fiercely disapproved of how Townsend performed his official duties
with regard to the chemical contamination at the Hayes-Sammons plant, and that
she believed that his official decisions resulted in property damage and serious
public health problems.  Whether or not appellant was justified in those beliefs
is immaterial—our only concern is whether her remarks would be reasonably
understood by an ordinary listener as having charged Townsend with criminal
behavior.  They would not.

            We therefore
conclude that the trial court erred in classifying appellant’s 2003 statement
as slanderous per se.  Because Townsend neither pleaded nor proved special
damages, the trial court’s only available course of action was to dismiss Townsend’s
claims.  See Kelly, 832 S.W.2d at 94; Stearns, 543 S.W.2d at 661-62. 
We sustain appellant’s second issue as it relates to the 2003 statement.[17]

            2.         Salinas

            We next consider
the statements allegedly made by appellant that the trial court found to be
defamatory per se as to Salinas.  At the outset, we note that the jury charge
included only a single broad-form damages question, question number eighteen,
asking what amount of money would fairly and reasonable compensate Salinas “for
the injury, if any, that resulted from the occurrence[s] in question.”  At the
charge conference, appellant’s counsel did not object to the submission of
question number eighteen on the grounds that a broad-form submission of damages
was improper and, instead, multiple, granulated damages questions should be
submitted.[18] 
Therefore, we will sustain the damages award to Salinas if any of the three
allegedly defamatory statements are legitimately actionable and supported by
the evidence.  See Wackenhut Corr. Corp. v. De La Rosa, 305 S.W.3d 594,
619-21, n.26 (Tex. App.–Corpus Christi 2009, no pet.) (holding that, when a
broad-form damages question allows the jury to base its award on both valid and
invalid grounds, the award may not be disturbed on appeal if the defendant did not
preserve an objection to the broad-form question on the basis that the jury may
have based its award on an improper ground) (citing Romero v. KPH Consol., Inc.,
166 S.W.3d 212 (Tex. 2005); In re B.L.D., 113 S.W.3d 340, 350 (Tex.
2003); Harris County v. Smith, 96 S.W.3d 230, 232 (Tex. 2002)).

First, we consider
whether appellant’s statements during the 2008 television interview were
defamatory per se.  The entire statement, as submitted to the jury, is as
follows:  “[W]e have to go fight in Court because even the mayor in La Joya
told me that Norberto Salinas went to talk to him to say that they were going
to kill me.”  Salinas concedes in his appellate brief that these allegations
“possessed the believability of an Elvis sighting; even in the Rio Grande
Valley, political opponents are not executed.”  But we are not called upon to
evaluate the objective credibility of allegedly defamatory statements; instead,
our task is to determine whether a person of “ordinary intelligence” would have
understood that Salinas was being accused of criminal behavior.  In this
instance, considering the surrounding circumstances, we conclude that an
ordinary listener would have reasonably understood appellant’s statement as
accusing Salinas of plotting to have her killed, which is a criminal offense.  See
Tex. Penal Code Ann. §§ 15.02
(criminal conspiracy), 19.02 (murder) (Vernon 2003).  We therefore find that
the trial court did not err in determining that this statement constituted
slander per se.

            We next turn to
the issue of actual malice.  The United States Supreme Court has held that
judges have a constitutional duty to “exercise independent judgment and
determine whether the record establishes actual malice with convincing clarity”
in defamation suits brought by public officials.  Bose Corp., 466 U.S.
at 514; Clark v. Jenkins, 248 S.W.3d 418, 435 (Tex. App.–Amarillo 2008,
pet. denied).  Because actual malice is required to be proved by clear and
convincing evidence, we will find the evidence to be legally sufficient only if
it is substantial enough such that the jury could reasonably form a firm belief
or conviction that appellant acted with actual malice.  See Sw. Bell Tel.
Co. v. Garza, 164 S.W.3d 607, 627 (Tex. 2004); see also Tex. Civ. Prac. & Rem. Code Ann. §
41.003(a) (Vernon Supp. 2009).  “If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually
insufficient.”  In the Interest of J.F.C., 96 S.W.3d 256, 266 (Tex.
2002).

            As noted,
defamatory words are communicated with actual malice when the defendant knows
the words are false or recklessly disregards whether the words are false or
not.  Randall’s Food Mkts., 891 S.W.2d at 646; Hagler, 884 S.W.2d
at 772.  “Reckless disregard” is a subjective standard, focusing on the
defendant’s state of mind.  Isaacks, 146 S.W.3d at 162 (citing Bentley,
94 S.W.3d at 591).  Mere negligence is not enough.  Id.  Rather, the
plaintiff must establish that the defendant in fact entertained serious doubts
as to the truth of his publication, or had a high degree of awareness of the
probable falsity of the published information.  Id.  Although actual
malice focuses on the defendant’s subjective state of mind, a plaintiff can
prove it through objective evidence about the circumstances surrounding the
alleged defamatory words.  Alaniz, 105 S.W.3d at 347 (citing Turner,
38 S.W.3d at 120).  Actual malice also may be proved by circumstantial evidence
of the defendant’s state of mind.  Id.

            At trial,
appellant was asked during direct examination about the circumstances regarding
the statement allegedly made by Mayor Leo that led to appellant’s remarks
during the televised interview.  Appellant explained:

I
went to a function where we were fund-raising to send a couple of younger kids,
or in their 20's, to the national democratic convention.  At that time, I sat
with Mr. [a]nd Mrs. Leo and some other friends. . . .  When I was talking to
Mr. Leo, I said, well, how’s Mr. Raymond doing?  That’s Ramon Garcia because they’re
good friends.  He says, no, I haven’t talked to Ramon, the one who’s calling me
is Norberto.  And Norberto told me he was going to kill you or he was going to
have you killed.  And I looked at Billy, like, what are you talking about?  And
he said, no, he said—he—he told me—he told me that.  And I said, Mr. Billy,
that’s not funny.  That’s not—are you for serious [sic]?  He said, no.  You
know he’s a very powerful man.

 

Mayor Leo testified that,
although he did not have any specific recollection of Salinas telling him that
he was “going to kill” appellant, he believed that was something Salinas “might
have said” given Salinas’s anger toward appellant at the time he spoke to Mayor
Leo.  On cross-examination, Salinas’s counsel inquired further as to the
circumstances surrounding Mayor Leo’s alleged statement:

Q.
[Salinas’s counsel] In October of 2008 after you heard this, what you told the
jury was a very serious accusation that was being made by—purported statement
that was being made by the mayor [of La Joya], did you call the police?

 

A.
[Appellant]                 No, sir.

 

Q.                                     You
didn’t report the fact that you’d gotten information from someone that someone
was trying to kill you?  You didn’t—you didn’t think that that was something
you should have reported to the police?

 

A.                                     No,
sir, I didn’t report it but I should have.

 

            Appellant’s
admission that she did not call the police in response to Mayor Leo’s alleged
statement, in combination with Mayor Leo’s failure to recall having made the
statement, allowed the jury to reasonably form a firm belief or conviction that
appellant harbored “serious doubts” as to whether Salinas actually planned to
kill her.  See Isaacks, 146 S.W.3d at 162.  Accordingly, the evidence
was legally and factually sufficient to establish that the appellant made the
televised remarks with actual malice.  See Garza, 164 S.W.3d at 627. 
Appellant’s fourth issue is overruled as it relates to the statements made
during the 2008 televised interview.

In light of
our conclusions that (1) the 2008 televised statement was defamatory per se as
to Salinas, and (2) the evidence was sufficient to establish that appellant
acted with actual malice in making that statement, we need not address
appellant’s second or fourth issues as they relate to (1) the statement made at
the 2005 city council meeting, or (2) the statement that “Norberto Salinas is a
drug dealer and corrupt politician.”[19] 
See Wackenhut Corr. Corp., 305 S.W.3d at 619-21, n.26 (citing Romero,
166 S.W.3d at 212; In re B.L.D., 113 S.W.3d at 350; Harris County,
96 S.W.3d at 232).  That is, because at least one of the grounds upon which the
jury based its damage award was legally valid, and because appellant did not
object to the broad-form damages question on the basis that more than one such
question should have been submitted, we may not disturb the jury’s award of
$30,000 in damages to Salinas.  See id.

C.        Sufficiency of
Evidence of Mental Anguish

            By her third
issue, appellant contends that there was insufficient evidence shown that
appellees suffered compensable mental anguish.  However, it is not necessary to
prove mental anguish where the words used are slanderous per se, because the
law presumes actual damages.  Kelly, 832 S.W.2d at 91; Shearson
Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 922 (Tex. App.–Corpus
Christi 1991, writ dism’d w.o.j.).  As noted, appellant’s statements, if
actionable, are actionable only as slander per se because neither appellee
pleaded or proved special damages.  See Kelly, 832 S.W.2d at 94; Stearns,
543 S.W.2d at 661-62.  Accordingly, appellees were under no obligation to prove
that they suffered compensable mental anguish.  We overrule appellant’s third
issue.

D.        Variance Between
Pleadings and Proof

            By her fifth
issue, appellant claims the judgment must be reversed because there was a fatal
variance between the pleadings and the evidence adduced at trial with respect
to the 2008 television interview.  Texas follows a “fair notice” standard for
pleading, which looks to whether the opposing party can ascertain from the
pleading the nature and basic issues of the controversy and what testimony will
be relevant.  Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896
(Tex. 2000).  To be reversible, any variance between the pleadings and the
proof “must be substantial, misleading, constitute surprise and be a
prejudicial departure from the pleadings.”  Fruehauf Corp. v. Ortega,
687 S.W.2d 777, 782 (Tex. App.–Corpus Christi 1985, no writ).

            In his sixth
amended plea in intervention, Salinas alleged that:

[J]ust
yesterday in a television interview [appellant] has stated that [Mayor] Salinas
was going to kill her.  She then contacted Mr. Billy Leo (Mayor of La Joya)
also telling him that Mr. Norberto Salinas was going to kill her.  These
statements were made in front of many people.

 

Appellant argues that the
evidence did not precisely establish that appellant told Mayor Leo that Salinas
was going to kill her.  Instead, according to appellant, the evidence
established that she stated during the interview that Mayor Leo told her that
Salinas told him that Salinas was going to kill her.  We disagree that
this slight difference between the pleadings and the proof presented at trial
was substantial or misleading.  “[A] broad submission of an issue will [not] be
reversed simply because one or more acts which contributed to the injury was
not particularly pleaded or proved.”  Fruehauf Corp., 687 S.W.2d at 782
(citing Brown v. Am. Transfer & Storage Co., 601 S.W.2d 931 (Tex.
1980)).  Further, a pleading is deemed sufficient “if it gives fair and
adequate notice of the facts upon which the pleader bases his claim.  The
purpose of this rule is to give the opposing party information sufficient to
enable him to prepare a defense.”  Roark v. Allen, 633 S.W.2d 804, 810
(Tex. 1982).  Here, the variance between appellant’s statement as alleged in
Salinas’s pleadings and the statement as proved was not prejudicial, nor did it
prevent appellant from preparing her defense.  Her fifth issue is therefore
overruled.

E.        Evidence of Fee
Sharing Agreement

            By her sixth
issue, appellant argues that the trial court erred by admitting evidence of her
“fee sharing agreement.”  Evidentiary rulings are committed to the trial court’s
sound discretion.  Bay Area Healthcare Group, Ltd. v. McShane, 239
S.W.3d 231, 234 (Tex. 2007); City of Brownsville v. Alvarado, 897 S.W.2d
750, 753 (Tex. 1995).  A trial court abuses its discretion when it rules
without reference to any guiding rules or principles.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998) (citing City of
Brownsville, 897 S.W.2d at 753).  If error is found, we will reverse only
if:  (1) the excluded evidence was controlling on a material issue; (2) the excluded
evidence was not cumulative of other evidence; and (3) the error probably
caused the rendition of an improper judgment or probably prevented the
appellant from properly presenting the case on appeal.  See Tex. R. App. P. 44.1; Tex. Dep’t of
Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).

            Appellant argues
that the evidence of her “fee sharing agreement” was irrelevant to any issue
properly before the jury and was “extremely prejudicial.”  Appellees contend
that the evidence was relevant as to appellant’s motive for making the
allegedly defamatory statements.  As noted, in the context of defamation,
“actual malice” does not include ill will, spite, or evil motive.  Alaniz,
105 S.W.3d at 346.  However, ordinary “malice” was also an issue before the jury,
because both appellees pleaded exemplary damages.  See Tex. Civ. Prac. & Rem. Code Ann. §
41.003(a) (providing that exemplary damages may be only awarded if the
plaintiff proves by clear and convincing evidence that the harm resulted from
fraud, malice, or gross negligence).  It was not an abuse of discretion for the
trial court to have found that the “fee sharing agreement” was relevant to the
issue of ordinary malice.  See id. § 41.001(7) (Vernon 2008) (“‘Malice’
means a specific intent by the defendant to cause substantial injury or harm to
the claimant.”).

            Further, we cannot
say that the trial court abused its discretion by concluding that the probative
value of this evidence outweighed its prejudicial value.  See Tex. R. Evid. 403 (“Although relevant,
evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of
cumulative evidence.”).  Appellant’s sixth issue is overruled.

IV.  Conclusion

            We reverse the
judgment of the trial court with respect to appellee Townsend and render
judgment that Townsend take nothing by way of his suit against appellant.  The
remainder of the trial court’s judgment is affirmed.

 

                                                                                                ________________________

                                                                                                DORI
CONTRERAS GARZA

                                                                                                Justice

 

Delivered and filed the

6th day of January, 2011.









[1] Justice Linda Reyna Yañez was a member of
the panel at the time this case was argued and submitted for decision.  However,
Justice Yañez could not participate in deciding the case, see Tex. R. App. P. 41.1, and retired
Justice Don Wittig was assigned to this Court by the Chief Justice of the
Supreme Court of Texas pursuant to the Texas Government Code.  See Tex. Gov’t Code Ann. § 74.003 (Vernon
Supp. 2004).

 





[2]
The contamination at the former Hayes-Sammons plant formed the basis of a
lawsuit involving hundreds of plaintiffs and dozens of defendants.  See In
re Allied Chem. Corp., 287 S.W.3d 115, 119-20 (Tex. App.–Corpus Christi
2009, orig. proceeding); In re Helena Chem. Co., 286 S.W.3d 492, 494
(Tex. App.–Corpus Christi 2009, orig. proceeding).  Appellant is one of the
plaintiffs in the suit; appellees are not parties to that suit.





[3]
The term “Superfund” refers to the Hazardous Substance Superfund set up by the
federal Comprehensive Environmental Response, Compensation, and Liability Act
of 1980.  See 26 U.S.C. § 9507, 42 U.S.C. §§ 9601-9628.  A “Superfund
site” is a contaminated area for which cleanup and remediation have been
designated by the EPA as eligible to be financed by Superfund proceeds.





[4]
Salinas was present at the August 25, 2005 meeting, as were the other members
of the Mission city council.  Townsend was not present at this meeting.





[5]
Though the television interview was conducted in Spanish, the parties
stipulated to the accuracy of this English translation that appears in the
record.





[6]
The testimony of Montes and De La Garza was provided in Spanish and was
translated into English by the court reporter.  The original Spanish testimony
does not appear in the record before this Court.  No party objected to the
translations of the pertinent parts of Montes’s and De La Garza’s testimony as
set forth above.





[7]
Salinas’s original plea in intervention complained only of the statements made
at the August 25, 2005 city council meeting.  Subsequent amended pleas in
intervention also complained of the statements made on the 2008 televised
interview and the statements made to Montes and De La Garza.





[8]
Appellant moved for a directed verdict at the close of appellees’ case-in-chief
and again at the close of all evidence.  The trial court denied both motions.





[9]
The trial court also concluded that the statements made at the March 24, 2003
city council meeting were potentially defamatory per quod as to Salinas, which
would have entitled him to a jury question on whether the statement was in fact
defamatory as to him.  However, Salinas did not request such a question and no
such question was included in the jury charge.





[10]
In accordance with appellees’ pleadings, which requested exemplary damages, the
jury was also asked whether it found by clear and convincing evidence that
appellant made the statements with “malice.”  See Tex. Civ. Prac. & Rem. Code Ann. §
41.003(a) (Vernon Supp. 2010) (providing that exemplary damages may be only
awarded if the plaintiff proves by clear and convincing evidence that the harm
resulted from fraud, malice, or gross negligence).  The jury concluded that all
of the statements, other than that made during the televised interview, were
made with malice.  Nevertheless, both Townsend and Salinas waived their
exemplary damages claims after the jury returned its verdict.





[11]
Appellees have filed a motion asking this Court to impose $5,000 in sanctions
on appellant.  See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
732 (Tex. 1997) (“Courts possess inherent power to discipline an attorney’s
behavior.”).  The motion alleges the following:  “Through fraud on the Hidalgo
County District Clerk, Appellant was able to obtain approval of a zero
supersedeas bond” after judgment was entered against her; “[d]espite the
clearly void nature” of the bond, appellees were “forced to challenge” the bond
in the trial court; as part of this challenge, appellees sought to depose
appellant and obtain documents from her; appellant refused to provide documents
on the dates suggested by appellees’ counsel; appellant was served with a
notice to produce the documents on December 7, 2009; appellant filed an
untimely motion to quash said notice; and appellant did not produce the
documents or appear for her deposition until January 2010.  Having fully
considered appellees’ motion and appellant’s response thereto, we deny the
motion for sanctions.





[12]
A “person of ordinary intelligence” is one who “exercises care and prudence,
but not omniscience, when evaluating allegedly defamatory communications.”  New
Times, Inc. v. Isaacks, 146 S.W.3d 144, 157 (Tex. 2004).





[13]
Texas courts have differed on whether a private slander plaintiff must prove
falsity as part of its prima facie case, or instead, whether truth of the
statement is an affirmative defense available to the defendant.  Compare
Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995)
(stating that truth is an affirmative defense in such suits) with Rogers v.
Dallas Morning News, Inc., 889 S.W.2d 467, 472 (Tex. App.–Dallas 1994, writ
denied) (stating that private slander plaintiffs have the burden of proving
that the statement is false).  However, when a slander plaintiff is a public
official or public figure, as here, the United States Constitution requires the
plaintiff to establish falsity.  Curtis Publ’g Co. v. Butts, 388 U.S.
130, 155 (1967); N.Y. Times v. Sullivan, 376 U.S. 254, 279-80 (1964); Turner
v. KTRK Television, 38 S.W.3d 103, 116-18 (Tex. 2000).





[14]
“Per quod” is Latin for “whereby,” Black’s
Law Dictionary 1141 (6th ed. 1990), and is defined as “requiring
reference to additional facts.”  Moore v. Waldrop, 166 S.W.3d 380, 384
n.1 (Tex. App.–Waco 2005, no pet.).  “Per se,” on the other hand, is defined as
“of, in, or by itself; standing alone.”  Black’s
Law Dictionary 1142.





[15]
Compensatory damages in defamation cases are divided into two categories: 
general and special. Peshak v. Greer, 13 S.W.3d 421, 427 (Tex.
App.–Corpus Christi 2000, no pet.).  General damages are damages for injuries
to character or reputation, injuries to feelings, mental anguish, and other
like injuries incapable of monetary valuation, Vista Chevrolet, Inc. v.
Barron, 698 S.W.2d 435, 441 (Tex. App.–Corpus Christi 1985, no writ), while
special damages involve some form of pecuniary or economic loss.  See
Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W.2d 762, 767 (Tex. 1987).





[16]
Prior to trial, the parties stipulated that Townsend and Salinas were public
figures at the time each allegedly slanderous statement was made, and that the
statements involved public issues.





[17]
Having concluded that appellant’s March 24, 2003 statement was not defamatory
per se, we need not address appellant’s fourth issue, challenging the
sufficiency of the evidence as to actual malice, as it relates to that
statement.  See Tex. R. App. P. 47.1.





[18]
Appellant’s counsel did object to question number eighteen at the charge
conference, but only on the following grounds:

[Defense
counsel]:    As to question number eighteen, the Defendant, again, incorporates
by reference the objections lodged as to questions fifteen [asking whether the
2008 television statement was false], sixteen [asking whether appellant acted
with actual malice as to the 2008 television statement] and seventeen [asking
whether the 2008 television statement proximately caused Salinas to suffer
mental anguish] regarding the variance with the pleadings and the statement as
printed in question fifteen and the lack of any evidence to support any issue
regarding that statement, the failure of [Salinas] to plead [slander] per quod
of the statement that—that could, at best, either be incapable of defamatory
meaning or ambiguous and, likewise, there being no pleading for special
damages, innuendo, or implication, there can be no entitlement to money damages
in—in—and this being the case, this is improper.

                                In
addition, there is no evidence or insufficient evidence of any injury suffered
by Norberto Salinas as a proximate result of any matter at issue in this case
that would rise to the level of an entitlement to money damages for mental
anguish.

                                And
this is regarding entitlement as it pertains to and as conditioned upon
[answer]s of yes to questions number eight [asking whether the 2005 city
council statement proximately caused Salinas to suffer mental anguish],
thirteen [asking whether the statement that Salinas is a “drug dealer and a
corrupt politician” proximately caused him to suffer mental anguish], or
seventeen.

THE
COURT:            Overruled.





[19]
We note that there was no evidence adduced at trial that appellant ever
actually uttered the words “Norberto Salinas is a drug dealer and corrupt
politician.”  In fact, no witness testified that appellant ever used the words
“corrupt politician” to describe Salinas.  Appellant’s counsel objected at
trial to the submission of jury charge question number ten, asking whether
appellant “made” the statement that “Norberto Salinas is a drug dealer and
corrupt politician,” on this basis.  However, the trial court overruled the
objection, and appellant does not challenge that ruling on appeal. 
Accordingly, we may not consider the issue.  See Walling v. Metcalfe,
863 S.W.2d 56, 58 (Tex. 1993) (“[T]he courts of appeals may not reverse the
judgment of a trial court for a reason not raised in a point of error.”)
(citing Vawter v. Garvey, 786 S.W.2d 263, 264 (Tex. 1990); San
Jacinto River Auth. v. Duke, 783 S.W.2d 209, 210 (Tex. 1990)).

Question number ten was also arguably erroneous as a matter of
law because it merely asked whether appellant “made” the statement and did not
ask whether she published the statement to a third party.  See, e.g., Reeves
v. Western Co. of N. Am., 867 S.W.2d 385, 393 (Tex. App.–San Antonio 1993,
writ denied) (reciting elements of slander).  However, appellant did not object
to the question at trial on this basis, and she does not raise the issue on
appeal, so we cannot reverse on this basis.  See Walling, 863 S.W.2d at
58.